IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALTON D. BROWN, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 07-3771 |
| | : | |
| DAVID DIGUGLIELMO, et al., | : | |
|     Defendants. | : | |

January __7_, 2016                                                                                            Anita B. Brody, J.

## MEMORANDUM

Plaintiff Alton D. Brown brings suit under 42 U.S.C. § 1983 against Defendants David Diguglielmo, Scott Williamson, William Banta, Dereck White, Charles Judge, Glenn Given, Jeff Zimmerman, John Nafus, Robert Cox, and twenty-nine John and Jane Does.  Brown alleges that Defendants, all of whom are current and former employees of the State Correctional Institution at Graterford ("Graterford"), violated the Eighth Amendment's prohibition on cruel and unusual punishment by exposing him, with deliberate indifference, to levels of environmental tobacco smoke ("ETS") that pose an unreasonable risk of harm to his future health.  Brown moves for partial summary judgment.  Defendants move for summary judgment.  For the reasons set forth below, I will deny Brown's motion for partial summary judgment, and I will grant in part and deny in part Defendants' motion for summary judgment.

**I.  BACKGROUND**

From January 2006 until July 2, 2013, Alton Brown was incarcerated at Graterford. Defs.' Mot. Summ. J. Ex. 1, at 14:1-4; 97:21-98:17 [hereinafter Brown Dep.].  While at Graterford, Brown lived almost exclusively in Housing Unit J ("J-Block"), a Restricted Housing Unit. *Id.* at 14:5-14.  Graterford prohibited staff from smoking on J-Block.  Defs.' Mot. Summ.

1

J. Statement of Undisputed Facts ¶ 8.  Despite this prohibition, "all kinds of staff members [were] smoking throughout the restricted housing unit."  Brown Dep. 23:2-3.  "People [were] smoking everywhere and there[] [was] smoke all over the air."  *Id.* at 34:13-17.  Staff members smoked on J-Block "so much," it "happened all day, . . . like a normal practice."  *Id.* at 75:21-76:5.

Graterford's Annual Safety Inspection Report of 2011 concluded: "Smoking evidence throughout the blocks by inmate and staff."  Defs.' Mot. Summ. J. Ex. 8, ¶ 3.  The Annual Safety Inspection Report of 2012 concluded: "Smoking is still evident."  *Id.* ¶ 4.  It also concluded in the section titled "J-Block": "Penthouse area is extremely filthy. Smoking is evident.  Beds are evident."  *Id.*  In 2012, Major Frances Feild sent an e-mail to Unit Managers, stating: "We are receiving smoking complaints that suggest this is a jail-wide problem."  *Id.* ¶ 6.  Lawrence Ludwig, Corrections Unit Manager for L-Block, responded to Feild: "We also have a problem with staff smoking on the units. . . . I see it throughout the jail."  *Id.*

Brown filed grievances on May 9, 2007, July 12, 2007, and March 25, 2011 related to his exposure to ETS.  Brown Dep. 46:9-16; 75:5-16.  In his May 9, 2007 grievance, Brown stated:

> I grieve being constantly subjected to second hand cigarette smoke from staff, who openly smoke through-out J-Block.  Their actions are causing me health problems and places me in danger of serious injury and/or death.  I note that state law ban smoking in public buildings.  I request an immediate stop of this practice on J-Block and compensation for any injury I may suffer as a result of staff smoking practices.
>                           *       *       *
> I have discussed this problem with most supervising staff on J-Block, including Dep. Williamson, Banta and Judge.  I wrote the Superintendent a request slip dated 4/2/07, but have not received a response.

Defs.' Mot. Summ. J. Ex. 2, D-4.  On May 11, 2007, the Facility Grievance Coordinator rejected Brown's grievance because "[t]he grievance does not indicate that you were personally affected by a Department or facility action or policy."  *Id.*

> In his July 12, 2007 grievance, Brown stated:
>
> I grieve being constantly subjected to <u>second Hand</u> cigarette smoke from staff on J-Block RHU, who are allowed to smoke throughout J-Block, in violation of prison rules. Their actions are causing health problems to reappear that had vanished a few years after I quit smoking in April 2000. I am once again having difficulty breathing, hearing wheezing sounds in my lungs, headaches, coughing, and constantly coughing up colored mucus. I note that the law prevents staff from smoking in state buildings. I request immediate relief from this environment and compensation for my injuries.
>
> \*   \*   \*
>
> This is my second attempt to grieve this matter, the first dated 5/9/07, was rejected on grounds that I had not been personally affected by staff actions. I have also discussed this problem with Dep. Williamson, U/M Banta, and Lt. Judge. I wrote the Superintendent a request slip dated 4/2/07. No staff wants to stop staff smoking practices.

*Id.* at D-5.

> In his March 25, 2011 grievance, Brown stated:
>
> I grieve [the] RHU practice of allowing the staff to smoke inside the building. This practice not only violate[s] federal and state law, but it also has a serious adverse effect on my health. It is time for this practice to stop. [I]f guards or other staff want to smoke they can go outside. The Block cameras can verify my claims. I request immediate relief and compensation for my injuries (lungs, liver, heart, etc.) I [sic] entire inmate RHU population can verify my claims, including Yassin Mohamad # CU-0143, Mark A. Nixon # GC-5892, B. Steven # HT-9957, Eric Miskovich # DA-5989, Milton Haggins # CW-4655, Ernest Nelson # HY-9156 and others.
>
> \*   \*   \*
>
> I have discussed this problem with U/M Day, Lt. White, Sgt. Holsey, U/M Ludwig and many others, however, all pretend staff don't smoke in the building, but I know what I see and smell.

*Id.* at D-7. On April 2, 2011, the Grievance Officer denied Brown's grievance, and provided the

following explanation:

> In response to the claim of staff smoking On J Unit, staff is not permitted to smoke on the unit. I have not observed any staff smoking on J Unit. Staff is directed to smoke outside of the unit. All staff was interviewed and they all denied smoking on the unit. You will not be given compensation for injuries due to you not sustaining any injury. You were vague and did not identify any staff who were smoking. Therefore your grievance is denied.

3

*Id.*

In addition to the grievances that Brown filed related to ETS, three different inmates filed grievances in 2011 and 2012 related to smoking on J-Block.  Defs.' Mot. Summ. J. Statement of Undisputed Facts ¶ 43.

During his time in Graterford, Brown's physical health deteriorated at a "rapid pace."  Brown Dep. 98:18-24.  His lung problems and breathing problems increased, and he was "always coughing up stuff."  *Id.* at 98:22-25.  In 2011, Brown was diagnosed with Chronic Obstructive Pulmonary Disease ("COPD").  *Id.* at 99:12-24; Defs.' Resp. to Pl.'s Partial Mot. Summ. J. 4, ¶ 10 (admitting that Brown was diagnosed with COPD while at Graterford).

On July 2, 2013, Brown was transferred from Graterford to the State Correctional Institution at Smithfield ("Smithfield").  Brown Dep. 97:21-98:17.  On May 11, 2015, Brown was transferred from Smithfield to the State Correctional Institution at Greene ("Greene"), where he currently resides.  Pl.'s Notice Address Change, ECF No. 247.

## II.  LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  *Id.*  In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

## III. DISCUSSION

Defendants provide three arguments in support of their motion for summary judgment: (1) Brown's ETS future injury claim is moot; (2) qualified immunity bars suit; and (3) Brown cannot succeed on his claim because there is no genuine dispute as to any material fact. In support of his motion for partial summary judgment, Brown argues that the evidence indisputably proves his ETS future injury claim for the time period of January 2006 to September 2008.[1]

---

[1] Brown does not move for summary judgment on his ETS future injury claim for any other time period he was allegedly exposed to ETS.

**A. Mootness**

Defendants argue that Brown's transfer out of Graterford moots any claims for injunctive relief. "An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). A "narrow exception" to mootness exists if: "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there [is] a reasonable likelihood that the same complaining party *would* be subjected to the same action again.'" *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Brown does not contend that the narrow exception to mootness applies to this action. Brown alleges that he was exposed for more than seven years to ETS at Graterford. The exception to mootness does not apply because this is not the type of action that is too short in duration to be fully litigated. Therefore, I will grant Defendants' motion for summary judgment as to Brown's ETS future injury claim for declaratory or equitable relief, including injunctive relief.

Defendants also move for summary judgment on Brown's ETS future injury claim for damages because they believe Brown "cannot proceed" on a claim for damages. Defs.' Mot. Summ. J. 5. The Third Circuit has stated that if a plaintiff with an ETS future injury claim "can produce evidence of future harm, he may be able to recover monetary damages." *Atkinson v. Taylor*, 316 F.3d 257, 265 n. 6 (3d Cir. 2003). Therefore, I will deny Defendants' motion for summary judgment predicated on Defendants' assertion that Brown cannot proceed with his ETS future injury claim for damages.

## B. Qualified Immunity

Defendants argue that they are entitled to qualified immunity for Brown's ETS future injury claim because it is not clearly established that they "could be liable for damages claims based upon future injury." Defs.' Mot. Summ. J. 5. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Atkinson*, the Third Circuit held that the state officials were not entitled to qualified immunity when the prisoner alleged an ETS future injury claim because the Supreme Court in *Helling v. McKinney*, 509 U.S. 25 (1993), clearly established the constitutional right to be free from involuntary exposure to levels of ETS that pose an unreasonable risk of future harm. 316 F.3d at 264.

Defendants do not argue that Brown's constitutional right to be free from involuntary exposure to levels of ETS that pose an unreasonable risk of harm to his future health is not clearly established. Rather, they argue that the type of remedy for this constitutional violation— monetary damages—is not clearly established. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as *their conduct* does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (emphasis added) (quoting *Harlow*, 457 U.S. at 818). It does not protect government officials from suit when they violate clearly established constitutional rights, even though the remedies for the violation of those rights may not be clearly established. I will deny Defendants' motion for summary judgment on the basis of

qualified immunity because Brown's ETS future injury claim raises a clearly established constitutional right.

## C. Genuine Disputes of Material Fact

Defendants contend that the evidence indisputably establishes that Brown cannot succeed on his ETS future injury claim. In contrast, Brown contends that the evidence indisputably proves his ETS future injury claim for the time period of January 2006 to September 2008. Both parties argue summary judgment is appropriate because there are no genuine disputes of material fact as to Brown's ETS future injury claim.

To establish an ETS future injury claim, a plaintiff must prove: (1) exposure to unreasonably high levels of ETS, the risk of which is not one that today's society chooses to tolerate; and (2) deliberate indifference by prison officials to the ETS exposure. *Helling*, 509 U.S. at 35-36. A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citation omitted).

Brown provides evidence that staff members on J-Block were constantly smoking, and Defendants provide conflicting evidence that very little smoking ever occurred. A genuine dispute of material fact exists as to whether Brown was exposed to unreasonably high levels of ETS. Brown presents evidence that Defendants Diguglielmo, Williamson, Banta, White, Judge,

and Zimmerman were deliberately indifferent to his exposure to unreasonably high levels of ETS.  Defendants provide conflicting evidence that these Defendants were unaware of the substantial risk of serious harm to Brown from exposure to unreasonably high levels of ETS.  Thus, a genuine dispute of material fact exists as to whether Defendants Diguglielmo, Williamson, Banta, White, Judge, and Zimmerman were deliberately indifferent to Brown's exposure to ETS.  I will deny Defendants' motion for summary judgment as to Defendants Diguglielmo, Williamson, Banta, White, Judge, and Zimmerman because genuine disputes of material fact exist as to whether they violated the Eighth Amendment's prohibition on cruel and unusual punishment by exposing Brown, with deliberate indifference, to levels of ETS that pose an unreasonable risk of harm to his future health.

Considering the evidence in the light most favorable to Brown, Brown cannot prove that Defendants Nafus, Given, Cox, and the twenty-nine Jane and John Does were deliberately indifferent to his exposure to unreasonably high levels of ETS.  While Brown spoke to every Defendant about smoking, Brown Dep. 125:17-19; 130:23-131:2, there is no evidence that he informed every Defendant of his constant exposure to high levels of ETS that posed an unreasonable risk of harm to his future health.  There is no evidence in the record that Defendants Nafus, Given, Cox, and the twenty-nine Jane and John Does knew of and disregarded a substantial risk to Brown's health from exposure to ETS.

Nafus only worked periodically on J-Block.  During 2006, Nafus worked on J-Block four to six shifts per month, and during the first half of 2007, he worked on J-Block approximately six times.  Defs.' Mot. Summ. J. Ex. 7, at 3.  Brown made "passing comment[s] mostly about smoking to Nafus."  Brown Dep. 129:22-130:3.  In the "one good conversation" Brown had with Nafus about smoking, he told Nafus "just about the smoking and how it was -- how I couldn't

9

stand to smell it no more, how it was irritating." *Id.* at 130:3-11.  Because Nafus only worked periodically on J-Block, Brown's passing comments about smoking on J-Block and his one good conversation with Nafus about smoke irritating him are insufficient to prove that Nafus was aware of facts from which the inference could be drawn that Brown faced a substantial risk of serious harm from exposure to ETS, and that Nafus made the inference.

Similar to Nafus, Given only periodically worked on J-Block.  From approximately May 2006 until June 2008, Given provided relief to the regularly assigned J-Block lieutenant.  Defs.' Mot. Summ. J. Ex. 7, at 3.  The only conversations that Brown had with Given regarding ETS "generally had something to do with staff being allowed to smoke . . . in the [J-Block] living area." Brown Dep. 125:20-126:1.  Because Given only worked periodically on J-Block, Brown's general conversations that staff were allowed to smoke on J-Block are insufficient to prove that Given was aware of facts from which the inference could be drawn that Brown faced a substantial risk of serious harm from exposure to ETS, and that Given made the inference.

Although Cox regularly worked on J-Block, Brown admits that Cox did not disregard any excessive risk posed to Brown's health from exposure to ETS.  Cox told Brown "that he [was] going to change the -- the -- the situation . . . but he was powerless though because he can't – that was too much for him to do. . . .  He agreed with me. . . . But -- but same old, same old.  The smokers -- the smokers ruled." *Id.* at 127:12-128:4.  Thus, Cox was not deliberately indifferent to Brown's exposure to unreasonably high levels of ETS.

The twenty-nine Jane and John Does remain unidentified.  Accordingly, there is no evidence that they were deliberately indifferent to Brown's exposure to unreasonably high levels of ETS.  I will grant Defendants' motion for summary judgment as to Defendants Nafus, Given,

10

Cox, and the twenty-nine Jane and John Does because Brown cannot prove that these Defendants were deliberately indifferent to Brown's exposure to unreasonably high levels of ETS.

Additionally, I will deny Brown's motion for partial summary judgment. I will deny Brown's motion for partial summary judgment as to Defendants Nafus, Given, Cox, and the twenty-nine Jane and John Does because Brown failed to present sufficient evidence to prove that they were deliberately indifferent to Brown's exposure to unreasonably high levels of ETS. I will deny Brown's motion for summary judgment as to Defendants Diguglielmo, Williamson, Banta, White, Judge, and Zimmerman because genuine disputes of material fact exist as to whether they exposed Brown, with deliberate indifference, to levels of ETS that pose an unreasonable risk of harm to his future health.

## IV.  CONCLUSION

For the reasons set forth above, I will deny Brown's motion for partial summary judgment, and I will grant in part and deny in part Defendants' motion for summary judgment. Defendants' motion for summary judgment is granted as to Brown's ETS future injury claim for declaratory or equitable relief, including injunctive relief, against all Defendants. Additionally, Defendants' motion for summary judgment is granted as to Brown's future injury claim for damages against Defendants Nafus, Given, Cox, and twenty-nine John and Jane Does. Defendants' motion for summary judgment is denied as to Brown's future injury claim for damages against Defendants Diguglielmo, Williamson, Banta, White, Judge, and Zimmerman.

                                                                           s/Anita B. Brody

                                                            _____
                                                            ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to: